**Affirmed; Opinion Filed January 29, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00818-CR

### JOHN DERRECK WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**
**Young County, Texas**
**Trial Court Cause No. 10720**

## MEMORANDUM OPINION
Before Justices Lang-Miers, Fillmore, and Stoddart
Opinion by Justice Stoddart

A jury convicted John Derreck Williams of possession of a controlled substance, methamphetamine, with intent to deliver in an amount of four grams or more but less than two hundred grams. In two issues, appellant argues the evidence is insufficient and the trial court abused its discretion when it found he was competent to stand trial. We affirm the trial court's judgment.[1]

FACTUAL BACKGROUND

Christopher Denney, a police sergeant with the Graham Police Department, stopped a car driven by appellant for speeding. During the stop, Denney asked appellant and his passenger to exit the car because he found their behavior suspicious. Denney observed what appeared to be a

---

[1] We note that this case was transferred to this court from the Court of Appeals for the Second District under a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013); *see also* TEX. R. APP. P. 41.3 (regarding controlling precedent).

bag of methamphetamine on the front floorboard. He then searched the car. He testified he found "a little dime bag that holds methamphetamine" and a larger bag containing approximately five to six grams of methamphetamine. Inside a zippered bag were approximately ten empty "dime size-type baggies." Denney explained dime-sized bags are used by drug dealers who sell methamphetamine. Denney testified the bags are "ultimately going to be filled up and sold to people once they [the buyers] tell them [the dealers] just how much they're wanting to purchase." Based on his training and experience, Denney believed the quantity of methamphetamine possessed by appellant was too much to be for personal use. The typical amount for personal use is a quarter to a half a gram.

In the car's console, Denney found Nitrile-type rubber gloves, which he explained are used to keep a person's hands clean and safe from chemicals, and a digital scale. He testified the scale, which had white residue on top that appeared to be methamphetamine, is the type of digital scale commonly used in the sale of narcotics. Denney believed appellant was "out there selling dope. He's out there delivering it and dividing up the quantities as to what each person is wanting to buy in quarter, half grams, grams, and then selling them." Pipes for smoking methamphetamine and marijuana also were found in the car. After appellant was arrested, he told Denney the drugs belonged to him.

A forensic chemist tested the substance seized from appellant and confirmed it was 4.714 grams of methamphetamine.

### Law & Analysis

The jury convicted appellant of possession of a controlled substance with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). In his second issue, appellant challenges the sufficiency of the evidence to show his intent to deliver because the evidence shows the drugs were for personal use.

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011) (footnotes omitted).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. When analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Id*. Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*.

As applicable here, a person commits the offense of possession of a controlled substance with intent to deliver if he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Methamphetamine is a controlled substance listed in Penalty Group 1. *Id.* § 481.102(6).

The evidence shows Denney found more than four grams of methamphetamine, small, empty plastic bags, a scale, and gloves in appellant's car along with other drug-related items. Denney testified that based on his training and experience, the quantity of methamphetamine

held by appellant was not consistent with personal use. Denney also explained rubber gloves, small bags, and the scale are items commonly used by drug dealers. Denney stated: "I believe [appellant is] out there selling dope. He's out there delivering it and dividing up the quantities as to what each person is wanting to buy in quarter, half grams, grams, and then selling them."

After viewing the evidence in the light most favorable to the verdict, we conclude any rational trier of fact could have found the essential elements of the crime, including intent to deliver, beyond a reasonable doubt. *See Clayton*, 235 S.W.3d at 778. We overrule appellant's second issue.

In his first issue, appellant argues the trial court abused its discretion by concluding he was competent to stand trial. Appellant asserts the competency evaluation was hurried and incomplete and, as a result, the testifying expert lacked a sufficient basis to offer his opinion.

Before beginning voir dire, appellant's counsel filed a suggestion of incompetence, which included his affidavit, and requested an examination. Appellant's counsel averred that appellant had an "unauthorized absence from custody" while incarcerated pending trial. After he was returned to jail, the jail staff reported appellant was talking to himself and to other people not present in his cell. Appellant believed the government "has his family" and "says that he hears them but they think he can't hear them. Defendant says that his brain is on [the] same frequency as cell phones and television." On the day of trial, appellant's counsel informed the court that his first indication appellant lacked competence occurred that day. Before then, appellant had a rational understanding of the nature of the proceedings and communicated with counsel.

At the hearing to determine appellant's competence, the State called Mitch Netterville, the jail administrator for Young County, to testify. Netterville had frequent contact with appellant while appellant was incarcerated and could evaluate appellant's physical and mental condition. Appellant was assigned to the outside work detail where he appeared to be "functioning fine,"

performing tasks assigned to him, and following orders. Appellant did not engage in any unusual behavior until three days before trial when he escaped while on work duty. When appellant was returned to the jail approximately one hour later, he was agitated and appeared intoxicated. He was segregated from others in the jail and, while watching him on a camera, Netterville saw appellant talking to himself, a behavior Netterville previously had not observed. After Netterville testified, the trial court heard arguments from counsel and took the matter under advisement. The court recessed the hearing to qualify the venire.

The court continued the competency hearing outside the venire's presence. The State called Dr. Brandon Bates to testify.[2] Bates has been a licensed psychologist for fifteen years and, as part of his practice, performs trial competency and insanity evaluations for the State. Bates reviewed background information about the charges against appellant, including the police report, and the reasons for the examination. Bates then conducted a clinical interview to determine appellant's competency.

Bates testified he used clinical procedures, techniques, and tests accepted in the State of Texas to determine competency. Bates observed appellant was alert and "oriented" although he appeared anxious, was evasive, had poor eye contact, and hesitated when answering questions. Appellant cooperated during the interview and Bates did not encounter problems communicating with appellant. Appellant verbalized the charges against him and the basis for those charges. Appellant understood the adversarial nature of the proceedings and the consequences of the pending criminal charges. They discussed appellant's attorney and the attorney's purpose. Bates testified appellant "was able to verbalize to me the purpose of his attorney and what his role was in helping him with the court proceeding." Bates believed appellant could disclose pertinent

---

[2] Although the exact timing of events is not clear from the record, Bates testified he performed the competency evaluation on the day he testified.

facts, events, and states of mind to his attorney. Bates was not aware whether appellant had any intellectual disability or mental illness.

During the interview, appellant informed Bates that his brain operates on the same frequency bands as cell phones do and worried that the "Illuminati" was targeting his family. Bates testified this fear did not indicate a mental illness, explaining: "[t]he problem is based on his history; that all of this is really, really new. And that's extremely rare in something like schizophrenia for these symptoms to pop up all the sudden. Same thing with like the delusional thinking. It seems like over the past two or three days that all of the sudden this came up, and that would be extremely rare in a situation like true mental illness." Bates agreed it was possible appellant experienced a psychotic episode causing him to hear voices and reach irrational conclusions. He conceded an opportunity to conduct a more detailed examination over several sessions would be helpful to determine whether appellant truly experienced psychotic episodes. Bates testified appellant's reported symptoms were "inconsistent with [a] typical psychotic episode and actually more consistent with something like malingering." Bates did not think appellant needed psychological treatment and concluded appellant was competent.

After hearing the testimony, the trial court concluded appellant was competent and proceeded with trial.

A person is presumed competent to stand trial and shall be found competent to stand trial unless proven incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b). A person is incompetent to stand trial if the person does not have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. *Id.* art. 46B.003(a). If the trial court or either party suggests a defendant may be incompetent, the court "shall determine by informal inquiry whether there is some evidence from any source that would

–6–

support a finding that the defendant may be incompetent." *Id.* art. 46B.004(c). If, after an informal inquiry, the trial court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is competent to stand trial. *Id.* art. 46B.005(a); *see also Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013). The trial court shall then hold a trial to determine whether the defendant is competent to stand trial on the merits. TEX. CODE CRIM. PROC. ANN. art. 46B.005(b).

We review issues involving competency determinations for an abuse of discretion. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692 & n.31 (Tex. Crim. App. 2013). We may not substitute our judgment for that of the trial court; instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Montoya*, 291 S.W.3d at 426. A trial court's firsthand factual assessment of a defendant's competency is entitled to great deference on appeal. *Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).

Appellant complains that the competency issue was addressed while the venire was waiting for voir dire to begin and the "pace of proceedings [was] not conclusive [sic] to a deliberative determination of a complex issue . . . suggesting that the trial court was forced to act without reference to guiding rules or principles concerning such matters." We note that the code of criminal procedure does not specify a time frame for reviewing a criminal defendant's competency. Additionally, although Bates indicated an opportunity to conduct a more detailed examination of appellant over several sessions would be helpful to determine whether appellant experienced a psychotic episode, Bates did not state he needed additional information to determine whether appellant was competent to stand trial. Even if we assume appellant was impaired to some extent, the evidence does not show that this impairment rendered him incompetent to stand trial. *See Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999) ("it

–7–

is within the purview of the trial judge to distinguish evidence showing only impairment from that indicating incompetency as contemplated by the law").

The evidence does not show appellant could not consult with his attorney or did not understand the proceeding against him. The evidence supports the conclusion that appellant was competent. He stated the charges against him and the reason for those charges, he understood the adversarial nature of the proceedings and the consequences of the pending criminal charges against him, he understood his attorney's purpose and his attorney's role in the court proceedings, and he could disclose pertinent facts, events and states of mind to his attorney. Based on the evidence, we conclude the trial court did not abuse its discretion by concluding appellant was competent to stand trial. We overrule appellant's first issue.

### CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170818F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN DERRECK WILLIAMS, Appellant

No. 05-17-00818-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 90th District Court,
Young County, Texas
Trial Court Cause No. 10720.
Opinion delivered by Justice Stoddart.
Justices Lang-Miers and Fillmore
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of January, 2018.